**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2428**

NADINE RANADE,

        Plaintiff - Appellant,

    v.

BT AMERICAS, INCORPORATED,

        Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:12-cv-01039-LO-TCB)

Submitted: July 18, 2014        Decided: August 5, 2014

Before GREGORY and KEENAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Annette K. Rubin, Leesburg, Virginia, for Appellant. Jeremy M. Brown, Newark, New Jersey, David B. Tatge, EPSTEIN, BECKER & GREEN, PC, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On September 18, 2012, Nadine Ranade (Ranade) brought this Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.,[1] action against BT Americas, Incorporated (BT Americas) claiming that BT Americas violated the FMLA when: (1) it discharged her from employment for alleged poor performance in March 2011 in retaliation for exercising her FMLA rights; and (2) it interfered with the exercise of her FMLA rights in September and October 2010.[2] Prior to her discharge, Ranade was employed by BT Americas as a consultant for approximately three years.[3] In a thorough memorandum opinion, the district court granted BT America's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Ranade appeals from this decision.

---

[1] The FMLA allows certain employees to take a total of "12 work weeks of leave" during a twelve-month period for a "serious health condition" that makes the employee "unable to perform the functions of" her job. 29 U.S.C. § 2612(a)(1)(D).

[2] Ranade's complaint simply alleges a "willful violation of the FMLA." (J.A. 10). The district court liberally construed Ranade's complaint to include an FMLA retaliation claim under 29 U.S.C. § 2615(a)(2) and an FMLA interference claim under 29 U.S.C. § 2615(a)(1).

[3] As a consultant, Ranade was assigned by BT Americas to work on telecommunications projects with client companies, such as Proctor & Gamble and Unilever. In this capacity, Ranade often worked with the employees of the client companies.

With regard to Ranade's FMLA retaliation claim under 29 U.S.C. § 2615(a)(2), the district court correctly concluded that BT Americas was entitled to summary judgment. We have previously recognized that, because FMLA retaliation claims are analogous to Title VII retaliation claims, they can be analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800–06 (1973). Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001). Ranade bears the burden of making a prima facie showing "that [s]he engaged in protected activity, that [BT Americas] took adverse action against [her], and that the adverse action was causally connected to [her] protected activity." Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). If she makes this prima facie showing, then BT Americas bears the burden of offering a nondiscriminatory explanation for its decision to terminate Ranade's employment, and, thereafter, the burden would return to Ranade to show that BT Americas' "proffered explanation is pretext for FMLA retaliation." Nichols, 251 F.3d at 502.

In this case, Ranade has failed to show that the district court erred in holding that she had not demonstrated pretext. First off, the nearly six-month gap between Ranade's FMLA leave (September 23 to October 5, 2010) and her termination in March 2011 undermines her claim that the two events are connected.

See King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (noting that a gap of two months and two weeks undermined the inference of causation in the plaintiff's FMLA retaliation claim). Second, the uncontroverted evidence in the record is that Ranade was given a performance improvement plan in September 2010 and ultimately was terminated because of her poor performance on a number of client accounts, including the Proctor & Gamble, Unilever, and Capital Group client accounts. The record further reflects that BT Americas made numerous efforts to assist Ranade in improving her performance, but ultimately terminated her when those efforts failed. Ranade has not introduced evidence from which a jury could find that BT Americas' legitimate, nondiscriminatory reason for terminating her was pretextual, and, therefore, she cannot maintain an FMLA retaliation claim.

With regard to the FMLA interference claim under 29 U.S.C. § 2615(a)(1), the district court correctly concluded that BT Americas was entitled to summary judgment on this claim as well. In order to establish a claim for interference with the exercise of FMLA rights, Ranade must prove not only the fact of interference, but also that the violation prejudiced her in some way. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002); see also 29 U.S.C. § 2617(a)(1). Such prejudice can be proven by showing that she lost compensation or benefits "by

4

reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I); sustained other monetary losses "as a direct result of the violation," id. § 2617(a)(1)(A)(i)(II); or suffered some loss in employment status remediable through "appropriate" equitable relief, such as employment, reinstatement, or promotion, id. § 2617(a)(1)(B).

In this case, Ranade has failed to show that the district court erred in holding that she had not met her burden of demonstrating that BT Americas interfered with the exercise of her FMLA rights. To be sure, Ranade notified BT Americas of her need for FMLA leave and submitted the required documentation on September 22, 2010, which indicated that she could not work more than fours hours per day, five days per week, effective immediately through December 15, 2010. BT Americas restructured Ranade's schedule to a part-time schedule of 8:00 a.m. to 12:00 p.m., beginning the next day, September 23, 2010. On October 6, 2010, Ranade's eligibility for FMLA leave ceased when she: (1) provided BT Americas with documentation from her physician clearing her to return to work full-time; and (2) returned to full-time work that day. It is not disputed that throughout the nine-day work period that Ranade qualified for a reduced work schedule under the FMLA, BT Americas accommodated her, and Ranade worked no more than four hours per work day during this nine-day work period. Nor is it disputed that, on October 6,

2010, she returned to a full-time work schedule with the same salary and benefits she had prior to taking FMLA leave, and BT Americas accommodated her ongoing physical therapy.

Ranade claims that BT Americas violated the FMLA when it informed her on October 5, 2010 that she could either return to work full-time or take continuous leave as provided under the FMLA. BT Americas made this decision because the client whose project Ranade was working on was unhappy with Ranade's reduced work schedule and BT Americas could not reach an acceptable work schedule solution with the client that satisfied both its and the client's needs. Ranade's claim in this regard fails for the simple reason that BT Americas was not required to provide a work schedule to Ranade that would disrupt its operations, and the uncontroverted evidence in the record is that a reduced work schedule (either in a flex or block form) was unworkable. See 29 C.F.R. 825.302(f) ("Intermittent leave or leave on a reduced leave schedule must be medically necessary due to a serious health condition . . . . The employee and employer shall attempt to work out a schedule for such leave that meets the employee's needs without unduly disrupting the employer's operations . . . . "). Moreover, the uncontroverted evidence in the record demonstrates that Ranade returned to full-time work on her own volition. It was her decision to schedule an appointment with her physician, and it was her physician that

6

determined she could return to work full-time. As the district court noted,

> [Ranade] can point to no evidence in the record that BT [Americas] threatened her job (explicitly or implicitly) or required her to come back full time, as opposed to taking continuous FMLA leave . . . . Rather, the email traffic from October 5 and 6 clearly demonstrates that Ranade simply chose one of several options available to her at the time. BT's obligations under the FMLA lapsed when Ranade's doctor officially cleared her to return full-time, with no restrictions. Because it is undisputed that BT [Americas] accommodated Ranade's request for a reduced schedule on each and every day that she qualified for FMLA leave, a reasonable jury could not conclude that BT [Americas] interfered with Ranade's rights under the FMLA.

(J.A. 664).

We also note that Ranade's interference claim suffers from another flaw--lack of prejudice. The only injury Ranade alleges is that, as a result of BT Americas' alleged unlawful denial of her request for a reduced work schedule was that she was not permitted to work a reduced work schedule. She does not claim that she lost any compensation or benefits, sustained other monetary loss, or suffered loss in employment status as a result of the purported interference. While Ranade sought lost wages and reinstatement in her complaint, she has failed to show that she is entitled to any of these remedies. As noted above, Ranade's termination of employment was a separate and unrelated event, and Ranade remained employed and was given full benefits until her termination. As such, her interference claim fails.

7

Cf. <u>Yashenko v. Harrah's NC Casino Co.</u>, 446 F.3d 541, 549-50 (4th Cir. 2006) (holding that, where the plaintiff was terminated due to a legitimate reason, he cannot show that he is entitled to reinstatement even if the employer otherwise interfered with his FMLA rights by denying leave).

For the reasons stated herein, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

8